## FOWLER v. EVANS.
### No. 13004.

Circuit Court of Appeals, Eighth Circuit.
April 16, 1945.

Pryor & Pryor, of Fort Smith, Ark., Lloyd Story, of Valliant, Okl., and W. A. Carlile and J. Hall Rains, both of Oklahoma City, Okl., for appellant.

John A. Sherrill, of Little Rock, Ark., and Cecil R. Warner and Harry P. Warner, both of Fort Smith, Ark., for appellee.

Before SANBORN, WOODROUGH, and RIDDICK, Circuit Judges.

WOODROUGH, Circuit Judge.

Diversity of citizenship and the amount involved established the federal jurisdiction in this case. The plaintiff alleged in his complaint, in substance, that on or about September 22, 1942, he and the defendant made an oral contract at Fort Smith, Arkansas, by the terms of which they mutually agreed to enter into a joint adventure to obtain a tract of land known as the Bizzell farm in Saline County, Arkansas, by lease, for the purpose of mining and selling bauxite therefrom; that the defendant would furnish the money to acquire the property and would furnish the equipment and would mine and sell the bauxite; that defendant would be credited with $2 per ton for such operations; that defendant, after deducting for the operations at that rate, and recoupment of the amount of his investment, would then divide the remaining receipts with plaintiff half and half and the property would be jointly owned by the two in the same proportions; that the defendant thereafter fraudulently bought the property from the owner and took title in his own name as trustee for unknown parties and has denied any in-

terest in the plaintiff. Plaintiff prayed for decree establishing a half ownership of the property in him, or, in the alternative, that he be awarded judgment against defendant for a half of the value, and other relief. The defendant answered by general denial. On a trial of the issues to the court, the court found in favor of defendant and dismissed the complaint for want of equity at plaintiff's costs. The plaintiff perfected this appeal but died before its submission, and the administratrix of his estate has been substituted.

 Reversal is sought on the ground that the trial court's findings and conclusions are against the clear weight of the evidence and contrary to law. We have carefully read and considered the testimony of each of the witnesses and the arguments of counsel, and we are convinced that each of the findings made by the trial court is supported by substantial evidence and that none is shown to be clearly erroneous.

Although the plaintiff testified concerning the alleged oral contract with the defendant upon which his action was predicated, the defendant gave his testimony to the effect that no such contract was entered into. The trial court found from the evidence that although the plaintiff represented to defendant that he, the plaintiff, had or could procure a mineral lease of the land [1] and orally made a proposal to the defendant that defendant undertake to pay the money required to obtain the lease and to develop it and mine bauxite therefrom and divide with plaintiff, that "no contract or agreement either express or implied was entered into by the plaintiff and defendant." The defendant caused a sufficient investigation of plaintiff's proposal to be made to ascertain that the plaintiff did not have any lease of the property and was not in position to obtain such lease. The land was owned by and in the possession of one Bizzell who had, by written option, granted the right to purchase it within a limited time and on specified terms, to one Anderson. Anderson had paid five thousand dollars on the option contract but was not in position to pay the purchase price, amounting to some seventy five thousand dollars, and he could not lease the

land and Bizzell would not agree to the execution of a lease, and when that situation was fully and clearly disclosed to plaintiff and defendant both the defendant and plaintiff, as the court found, "considered the negotiations closed". The defendant had not, up to that time, made or caused to be made, any exploration by core drilling and other tests usual and necessary to determine the fitness of the land for bauxite mining, without which testing, as defendant testified he would not consider entering into any contract or doing any development work on the land. His agent had merely had a surface view of it, affording no sufficient information or contracting or for commencement of mining operations. The plaintiff had no experience in bauxite mining and no proof of tests upon which the defendant would or did place any reliance.

Several weeks after all negotiations between plaintiff and defendant had been abandoned, Anderson, whose time was running out on his option, initiated negotiations with defendant to sell the land, and defendant, after making core drillings and other usual examinations, ultimately acquired the land as trustee for other persons and has made development and mined large quantities of bauxite therefrom. The court found on sufficient evidence that no confidential or fiduciary relationship existed between plaintiff and defendant and that defendant had made no false representation or promise of any kind to plaintiff, and that at the time defendant bought the property he did not know that plaintiff claimed any interest in the land or bauxite. The evidence is clear that the plaintiff had no interest. The court's conclusion that the facts as disclosed by the testimony were not sufficient to create or raise a constructive trust or to make the defendant a trustee ex maleficio followed necessarily from its findings.

Although the law of Arkansas recognizes that a parol agreement to enter into a joint enterprise, if clearly proven, may be enforced in a proper case, the burden in such an action is upon the plaintiff to establish the existence of the contract.

Here the trial court, who saw and heard the witnesses, has determined that there

---

[1] The plaintiff's testimony included the following:

"Q. You contacted Mr. Evans and told him that you had a lease or that you didn't, which was it? A. I had one.

"Q. You told him that you had a lease? A. Yes, sir.

"Q. Is that what you told him? A. Yes."

894

was no such contract between plaintiff and defendant, express or implied, and as the finding, though upon conflicting evidence in some particulars, was not clearly erroneous, it may not be overturned in this court. As the defendant never agreed to, and was under no obligation to enter into any joint enterprise with plaintiff in respect to the Bizzell farm, there is no occasion to discuss the law applicable in those cases where an agreement for such joint enterprise has been shown. The several contentions for the plaintiff concerning the opposite inferences, which, it is said, should have been drawn from the testimony and particulars thereof, have been carefully considered, but we find no grounds to upset the findings of the trial court.

The point especially stressed by plaintiff that he was the one who first brought the Bizzell farm as a potential bauxite mine property to defendant's attention, appears to be of no particular importance. There is and could be no claim that plaintiff was an original discoverer of the bauxite potential of the farm. The matter of importance when plaintiff approached defendant to try to negotiate a deal was whether the plaintiff had a lease or could get one to justify defendant in making exploration and in agreeing upon a deal if the exploration warranted. When it appeared that plaintiff had no lease and could not get one, it became evident to plaintiff and to the defendant that the plaintiff had nothing to offer, and as the court found on sufficient evidence, "the plaintiff abandoned any claim on the lands and ceased negotiations with defendant of his own free will".

The judgment appealed from is affirmed.